```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X    On appeal from the
In re:                             :    U.S. Bankruptcy
                                   :    Court for the
MF GLOBAL INC.,                    :    Southern District
                                   :    of New York
             Debtor.               :
                                   :    11-2790 (MG) SIPA
-----------------------------------:
PRICEWATERHOUSECOOPERS LLP,         :
                                   :
             Appellant,            :
                                   :
         - against -               :    13 Civ. 8893 (VM)
                                   :
JAMES W. GIDDENS, as Trustee for   :    DECISION AND ORDER
the SIPA Liquidation of MF Global  :
Inc.,                              :
                                   :
             Appellee.             :
-----------------------------------X
BRADLEY ABELOW, et al.,             :
                                   :
             Appellants,           :
                                   :
         - against -               :
                                   :
JAMES W. GIDDENS, as Trustee for   :
the SIPA Liquidation of MF Global  :
Inc.,                              :
                                   :
             Appellee.             :
-----------------------------------X
```



**VICTOR MARRERO, United States District Judge.**

On October 2, 2013, James W. Giddens, as Trustee for the liquidation of MF Global Inc. (the "Trustee"), filed the Trustee's Motion to (I) Approve the Trustee's Allocation of Property and (II) Approve the Terms of an Advance of General Estate Property for the Purpose of Making a Final 100% Distribution to Former Commodity

Futures Customers of MF Global Inc. (the "Trustee's Motion") with Judge Martin Glenn of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The appellants in this matter, Bradley Abelow, Jon Corzine, David Dunne, Laurie Ferber, Vinay Mahajan, Edith O'Brien, Christine Serwinski, Henri Steenkamp (collectively, the "Individual Appellants"), and PricewaterhouseCoopers LLC ("PwC") (collectively, "Appellants"), filed limited objections to the Trustee's Motion.

At a November 5, 2013 hearing, the Bankruptcy Court rejected Appellants' arguments. By Order dated November 6, 2013 (the "Bankruptcy Court's Order"), the Bankruptcy Court granted the Trustee's Motion in all respects. On December 16, 2013, PwC filed a notice of appeal from the Bankruptcy Court's Order; on December 18, 2013, the Individual Appellants filed a separate notice of appeal from the same Order. The Court consolidated both appeals under this docket. (Dkt. No. 29.)

- 2 -

## I.   BACKGROUND[1]

This case arises out of the liquidation of MF Global Inc. ("MFGI"), a wholly owned subsidiary of MF Global Holdings Ltd. ("MF Global").[2]  As part of that liquidation, the Trustee has marshaled assets to use in repaying MFGI's creditors, including its customers and MF Global, its sole shareholder.  At issue here are assets from three separate sources: the Trustee's settlement with the CME Group Inc. (the "CME Settlement Assets"), the Trustee's settlement with JPMorgan Chase Bank N.A. (the "JPMC Settlement Assets"), and excess assets that remained after the Trustee had fully satisfied claims of MFGI's securities customers (the "Securities Excess").

In the Trustee's Motion, the Trustee proposed to advance the CME Settlement Assets, the JPMC Settlement Assets, and the Securities Excess (collectively, the

---

[1] In a bankruptcy appeal, the record consists of "the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the [bankruptcy] court."  Fed. R. Bankr. P. 8006. Unless otherwise noted explicitly, the factual summary below is derived from these documents.  Except where specifically quoted, no further citation will be made to the documents in the record.

[2] The Court assumes familiarity with the circumstances surrounding MF Global's collapse, which it has described in prior decisions.  See In re MF Global Holdings Ltd. Sec. Litig. (MF Global I), --- F. Supp. 2d ---, No. 11 Civ. 7866, 2013 WL 5996426, at *4-13 (S.D.N.Y. Nov. 12, 2013); Dkt. No. 614 in Deangelis v. Corzine et al., No. 11 Civ. 7866 (S.D.N.Y.).

"Estate Assets") from MFGI's general estate (the "general estate") to MFGI's customer estates (the "customer estates").[3]  The Trustee was obligated to seek permission to advance the Estate Assets to the customer estates by virtue of his consensual settlement with the U.S. Commodity Futures Trading Commission ("CFTC"), which this Court approved on November 8, 2013.  (Dkt. No. 571 in <u>Deangelis v. Corzine et al.</u>, No. 11 Civ. 7866 (S.D.N.Y.).)  The Trustee's Motion also involved agreements with the named representatives of a putative customer class of MFGI customers (the "Customers"), who have filed a complaint against Appellants (the "Customer Action") (Dkt. No. 382 in <u>Deangelis v. Corzine et al.</u>, No. 11 Civ. 7866 (S.D.N.Y.)), and with MF Global, which serves as plan administrator in the separate liquidation of MF Global and its subsidiaries (the "Plan Administrator").

The Trustee's Motion sought to implement the agreement among the Trustee, the CFTC, the Customers, and the Plan

---

[3] "[A] SIPA estate is composed of two parts: a general estate and a separate fund of 'customer property' consisting generally of the cash and securities entrusted to the liquidating broker-dealer by 'customers.'"  1 <u>Collier on Bankruptcy</u> § 12.02 (16th ed. 2013).  MFGI's customer property involves three separate estates: one for accounts of domestic-trading customers, one for accounts of foreign-trading customers, and one for accounts of securities customers.  Because the securities customers have been paid in full, the proposed advance was to the other two customer estates.

Administrator as follows.   First, the Trustee asked the Bankruptcy Court to find, based on evidence that the Trustee presented, that there was a shortfall of at least $560 million in the customer estates.   To cover that shortfall, the Trustee would advance the Estate Assets from the general estate to the customer estates.   The Trustee would then distribute those assets to the class represented by the Customers, such that all customers would receive 100% of their claims against MFGI.   In exchange for this distribution, the Trustee would assume the Customers' claims in the Customer Action by assignment and subrogation.   The Customers' counsel would continue to pursue the claims in the Customer Action, but all recovery in that proceeding would (after payment of reasonable attorney's fees) become part of the general estate for the Trustee to distribute to MFGI's remaining creditors. Finally, the Plan Administrator, as representative of MFGI's largest creditor, would not object to the advance of the Estate Assets, but only because the Trustee (through the Customers' counsel) would continue, in the Customer Action, to pursue damages that could be used to pay MF Global and MFGI's other general creditors.

- 5 -

This carefully crafted agreement satisfied everyone except for PwC and the Individual Appellants, who each filed a limited objection to the Trustee's Motion. They claimed standing to object because, in their view, the Trustee's Motion affected their defenses in the Customer Action. Appellants argued that the Estate Assets belonged to the customer estates, not the general estate, and thus the Trustee was wrong to describe the distribution to the customer estates as an advance from the general estate. Appellants also disputed the factual basis for the finding of a shortfall in the customer estates. Finally, they claimed that the assignment and subrogation of the Customers' claims to the Trustee was invalid. The Trustee, the Customers, the Plan Administrator, and the CFTC all opposed Appellants' objections.

The Bankruptcy Court held a hearing on November 5, 2013. (See Tr. of 11/5/2013 Hearing re: Trustee's Mot., Dkt. No. 7231 in In the matter of: MF Global Inc., No. 11-2790-mg (Bankr. S.D.N.Y.) ("Tr.").) At the conclusion of that hearing, the Bankruptcy Court ruled that Appellants lacked standing to object to the Trustee's Motion; that the Estate Assets were property of the general estate; that there was a shortfall of at least $560 million in the

customer estates; and that the Trustee could validly assume the Customers' claims in the Customer Action through assignment and subrogation. (Tr. at 74-89.) Appellants now appeal the Bankruptcy Court's ruling. The Trustee, the Customers, the Plan Administrator, and the CFTC[4] oppose the appeal.

## II. <u>LEGAL STANDARD</u>

A district court has jurisdiction to review an appeal from a final order of a bankruptcy court under 28 U.S.C. § 158(a). The district court reviews questions of law <u>de novo</u>. <u>Flake v. Alper Holdings USA, Inc.</u> (<u>In re Alper Holdings USA, Inc.</u>), 398 B.R. 736, 747 (S.D.N.Y. 2008); <u>see also</u> <u>Babitt v. Vebeliunas</u> (<u>In re Vebeliunas</u>), 332 F.3d 85, 90 (2d Cir. 2003). A bankruptcy court's findings of fact are reviewed only for clear error. <u>Babitt</u>, 332 F.3d at 90; <u>Flake</u>, 398 B.R. at 747; <u>see also</u> Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."). The bankruptcy court's discovery rulings "are reversed only upon a clear showing of an abuse of discretion." <u>DG Creditor Corp. v. Dabah</u> (<u>In re DG</u>

---

[4] On January 16, 2014, the Court granted the CFTC's request to file an amicus curiae brief in this matter. (Dkt. No. 14.)

Acquisition Corp.), 151 F.3d 75, 79 (2d Cir. 1998)
(internal quotation mark omitted).

### III. DISCUSSION

Appellants argue that the Bankruptcy Court erred by
(1) denying them standing to contest aspects of the
Trustee's Motion that affect their rights in the Customer
Action; (2) finding a $560 million shortfall in MFGI's
customer estates without an adequate factual record and
without permitting discovery; and (3) permitting the
Trustee to accept assignment and subrogation of the
Customers' claims.

At bottom, Appellants are trying to put the Trustee,
like Sophie, in a forbidding dilemma between two extreme
choices: one awful, the other equally so.    Under
Appellants' view of the law, the Trustee must either pay
customers now and forgo pursuit of other property that
might be used to satisfy other creditors, or pursue that
other property but force customers to wait indefinitely for
funds that could be made available to them now.    If the
applicable law required the Trustee to choose between those
options, he would have to decide whether to sacrifice the
customers' right to immediate repayment or to sacrifice the
general creditors' right to any repayment.    But the law

- 8 -

here does not compel such harsh results.  The Trustee's Motion serves the equitable purposes of both repaying customers their lost funds immediately -- while also holding Appellants accountable for any acts they committed that caused the loss of those funds -- and ensuring that the maximum amount of funds is collected to repay other creditors.  The law properly permits that outcome.

For the reasons described below, the Court affirms the Bankruptcy Court's ruling that Appellants lack standing to challenge the Bankruptcy Court's Order.  Moreover, even if the Court found that Appellants do have standing, the Court is not persuaded that the Bankruptcy Court committed any error in finding a shortfall or permitting the assignment and subrogation of the Customers' claims to the Trustee.

**A.   <u>STANDING</u>**

"[T]he Second Circuit has made it clear that the parties who should be able to appeal Bankruptcy Court Orders are limited."  <u>In re Ashford Hotels, Ltd.</u>, 235 B.R. 734, 739 (S.D.N.Y. 1999).  "[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved -- a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court."  <u>Drawbridge Special Opportunities Fund</u>

LP v. Barnet (In re Barnet), 737 F.3d 238, 242 (2d Cir.
2013) (quoting DISH Network Corp. v. DBSD N. Am., Inc. (In
re BDSD N. Am., Inc.), 634 F.3d 79, 89 (2d Cir. 2011))
(internal quotation marks omitted).   That standard is
strict, lest "bankruptcy litigation . . . become mired in
endless appeals brought by the myriad of parties who are
indirectly affected by every bankruptcy court order."   Id.
(quoting Kabro Assocs. of W. Islip, LLC v. Colony Hill
Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 273 (2d
Cir. 1997)) (internal quotation marks omitted).

Appellants claim standing based merely on claims that
parts of the Bankruptcy Court's Order "appear to . . .
presuppos[e] the issues" in the Customer Action
(PricewaterhouseCoopers LLP's Br. Supp. Appeal of
Bankruptcy Ct.'s Order, dated Jan. 9, 2014 ("PwC's Br."),
Dkt. No. 9, at 13 (emphasis added)) or "purport to
prejudice Appellants' rights" in the Customer Action (Br.
for Appellants Bradley Abelow, Jon Corzine, David Dunne,
Laurie Ferber, Vinay Mahajan, Edith O'Brien, Christine
Serwinski, and Henri Steenkamp, dated Jan. 9, 2014 ("Indiv.
Appellants' Br."), Dkt. No. 7 in 13 Civ. 8956, at 22
(emphasis added)).   But the potential impact of a
bankruptcy court's decision on a party's separate

- 10 -

proceeding does not confer on that party standing to appeal the bankruptcy court's decision. See Moran v. LTV Steel Co. (In re LTV Steel Co.), 560 F.3d 449, 453 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal."); O'Brien v. Vermont (In re O'Brien), 184 F.3d 140 (2d Cir. 1999) ("[T]he risk that a Vermont court might at some future point defer to dicta in the bankruptcy court's opinion as persuasive does not make Vermont an aggrieved party." (citing California v. Rooney, 483 U.S. 307, 311 (1987) (per curiam))); In re Ashford Hotels, Ltd., 235 B.R. 734, 739 (S.D.N.Y. 1999) (noting similar decisions from the First, Third, and Ninth Circuits). Thus, Appellants do not have standing solely based on the potential impact that the Bankruptcy Court's Order may have in the Customer Action. See In re Ashford, 235 B.R. at 738-39 (finding no standing merely because bankruptcy order would allow separate proceeding to continue).

In an effort to avoid this clear barrier to standing, Appellants argue that they are not exposed to potential

- 11 -

harm in the Customer Action, but rather subject to <u>certain</u> harm. But Appellants' argument is circular. They assume that the Bankruptcy Court's finding of a shortfall in Customer Estates and authorization of the Assignment Agreement binds them in the Customer Action. That assumption is incorrect. The Bankruptcy Court clearly stated that its order would not affect the Customer Action. (Tr. at 55, 59, 69.) Both the Trustee and the Customer Representatives have repeatedly endorsed that statement. (Br. of Appellee James W. Giddens, as Trustee for SIPA Liquidation of MFGI, dated Jan. 23, 2014, Dkt. No. 21, at 12-13; Customer Representatives' Br. Resp. to Appeals, dated Jan. 23, 2014, Dkt. No. 22, at 7; Tr. at 13; Tr. at 39.) And despite Appellants' bare assertions to the contrary, nothing in the Bankruptcy Court's Order indicates that it will have any effect on the Customer Action.

Even if the Trustee and the Customers intended to affect Appellants' rights in the Customer Action, they could not do so. Because Appellants are not parties to this proceeding, any issues decided here cannot bind Appellants in the Customer Action. <u>See</u> <u>Savage & Assocs.,</u> <u>P.C. v. K & L Gates LLP</u> (<u>In re Teligent, Inc.</u>), 640 F.3d 53, 61 (2d Cir. 2011) (noting that party without standing

to appeal approval of settlement agreement could challenge
agreement's validity in later proceeding); see also Taylor
v. Sturgell, 553 U.S. 880, 892-93 (2008) (explaining
general rule that non-party is not bound by a judgment in a
later proceeding).   Thus, Appellants will have a full
opportunity to contest the issues they raise here in the
Customer Action.

    As  an  alternative  to  granting  them  standing,
Appellants have asked this Court to modify the Bankruptcy
Court's Order to "make clear" that it is "not binding on
the parties, or probative of any issues, in" the Customer
Action (PwC's Br. at 25), and "to make clear that [the
order has] no binding effect on the Appellants" (Indiv.
Appellants' Br. at 25).   No modification is necessary to
accomplish these goals, and Appellants do not specify what
modifications they seek.   The Court is simply at a loss to
understand why Appellants believe that the Bankruptcy
Court's Order has any effect on their defenses in the
Customer Action.

    In  arguing  that  the  Bankruptcy  Court's  Order
prejudices them in the Customer Action, Appellants' legal
theories construct a straw man, which they have spent
considerable effort, time, and resources striking down,

- 13 -

both in the Bankruptcy Court and again in this Court.
Their continuing protests here, and if the pattern holds,
probably next on appeal, that the Bankruptcy Court's Order
unfairly does something that the Order simply does not (and
could not possibly) do, demonstrably suggests that such a
formidable endeavor must possess as a substantial point a
force in common with the unified stance defendants have
presented in the extensive related litigation set in motion
by MF Global's collapse: to postpone the moment of truth
that finally answers the many unknowns about the reasons
and responsibility for the spectacular fall of MF Global.

The Bankruptcy Court's Order does not affect
Appellants' rights to litigate these issues in the Customer
Action.  As a consequence, Appellants do not have standing
to pursue this appeal.

**B.    SHORTFALL FINDING**

The bankruptcy code's definition of "customer
property," 11 U.S.C. § 761(10), is "expansive." <u>HSBC Bank</u>
<u>USA v. Fane</u> (<u>In re MF Global Inc.</u>), 466 B.R. 244, 249
(Bankr. S.D.N.Y. 2012).  The Commodity Exchange Act permits
the CFTC, through regulations, "to add to, or subtract
from, that definition." <u>Koch Supply & Trading LP v. Giddens</u>
(<u>In re MF Global Inc.</u>), 484 B.R. 18, 23 (Bankr. S.D.N.Y.

- 14 -

2012) (citing 7 U.S.C. § 24(a)(1)). Under that provision, the CFTC has promulgated its own broad definition of customer property. See 17 C.F.R. § 190.08(a).

The Bankruptcy Court held that the CME Settlement Assets, the JPMC Settlement Assets, and the Securities Excess did not fall under the definition of customer property. Appellants raise three grounds to challenge that finding: (1) that the Bankruptcy Court erred in its factual finding that the property was not customer property under either 17 C.F.R. § 190.08(a)(1)(ii)(F) ("Subsection F") or 17 C.F.R. § 190.08(a)(1)(ii)(G) ("Subsection G"); (2) that the Bankruptcy Court erred in failing to permit further discovery on that factual issue; and (3) that the Bankruptcy Court committed legal error in its determination that 17 C.F.R. § 190.08(a)(1)(ii)(J) ("Subsection J") did not apply.

Subsection F includes property that "[w]as unlawfully converted but is part of the debtor's estate" in the definition of customer property, and Subsection G includes in that definition "property of the debtor that any applicable law, rule, regulation, or order requires to be set aside for the benefit of customers, unless including such property in the customer estate would not

- 15 -

significantly increase the customer estate." The Bankruptcy Court determined that neither definition encompassed the assets at issue. This Court may reverse that ruling only if the Bankruptcy Court's factual finding was clearly erroneous. See Babitt, 332 F.3d at 90. To conclude that the finding was clear error, this Court must be "left with the definite and firm conviction that a mistake has been committed." Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.), 490 B.R. 470, 475 (S.D.N.Y. 2013) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)) (internal quotation mark omitted).

The Court is not persuaded that the Bankruptcy Court committed clear error. The Bankruptcy Court considered and rejected the view that the property at issue fit within Subsection F or Subsection G. (Tr. at 82.) While Appellants quibble with those findings, it is not this Court's role to re-weigh the evidence or second-guess the Bankruptcy Court's reasoned judgment. The Bankruptcy Court based its determination on an adequate record and with a substantial basis in fact.

For similar reasons, the Court concludes that the Bankruptcy Court did not abuse its discretion in denying Appellants the right to engage in discovery. The

- 16 -

Bankruptcy Court was required to permit introduction of
further evidence only if there were "disputed issues of
material fact that" it could not "decide based on the
record." Wilmington Trust Co., 490 B.R. at 479.   The
Bankruptcy Court found that there were "no contested issues
of fact."   (Tr. at 75.)   While the parties disputed the
legal impact of the material facts in the record, there is
no evidence of a dispute about the facts themselves.
Indeed, Appellants do not specify what discovery they would
seek or why discovery would make a difference in this case.

Finally, the Court agrees with the Bankruptcy Court's
legal conclusion that Subsection J does not apply at this
stage.[5]   Under Subsection J, customer property includes
"cash, securities or other property of the debtor's estate
. . . only to the extent that" other customer property "is
insufficient to satisfy in full all claims of public
customers."   17 C.F.R. § 190.08(a)(1)(ii)(J).   Appellants
argue that this section should apply to convert any of the
property at issue into customer property, thus obviating

---

[5] For this reason, the Court need not reach the Plan Administrator's
argument, which the CFTC strongly opposes, that Section J exceeds the
CFTC's rulemaking authority.   See In re Griffin Trading Co., 245 B.R.
291, 318-19 (Bankr. N.D. Ill. 2000) (concluding that Subsection J
"exceeds the CFTC's statutory authority to regulate and must be
stricken"), vacated, 270 B.R. 882 (N.D. Ill. 2001) (vacating judgment
in light of settlement among the parties).

the existence of any shortfall.  The Trustee, Customers, and Plan Administrator all contend that Subsection J should apply only after the Customer Action -- the last remaining source of customer property -- is complete and any recovery made in those actions is applied to the amount of customer property.  The CFTC, as amicus, supports the appellees' position, and its view is entitled to deference.  See Auer v. Robbins, 519 U.S. 542, 461 (1997) (holding that agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)); Union Carbide Corp. v. Commissioner of Internal Revenue, 697 F.3d 104, 109 (2d Cir. 2012) ("We ordinarily give deference to an agency's interpretation of its own ambiguous regulations, even if that interpretation appears in a legal brief.").

The Bankruptcy Court's view of Subsection J is consistent with the provision's text, which indicates that it applies "only to the extent that" other property is insufficient.  17 C.F.R. § 190.08(a)(1)(ii)(J) (emphasis added).  Because there exists the potential for other customer property to be recovered, the Court cannot say at

this point that such property will be "insufficient to satisfy in full all claims of public customers." Id.

Moreover, accepting Appellants' position would lead to a multitude of perverse outcomes. It would punish the Trustee for acting quickly to collect assets before the lengthy litigation in the Customer Action reaches resolution. Appellants' interpretation of Subsection J would also insulate them from liability for any wrongful acts, such as those alleged in the Customer Action, just because the amount of money they lost on the Customers' behalf was collected elsewhere. Indeed, the more practical consequence of Appellants' position would be to prevent the Trustee from distributing funds to the Customers now; he would instead have to wait until the Customer Action is fully resolved and then distribute funds accordingly. But all parties -- even Appellants -- agree that allocating the funds currently in the Trustee's possession to customers is a worthwhile goal. The only reasonable way to accomplish that goal is to reject Appellants' position and hold that Subsection J does not apply until after the Customer Action is completed.

For those reasons, the Court affirms the Bankruptcy Court's finding of a shortfall in the customer estates.

- 19 -

C.   **ASSIGNMENT AND SUBROGATION**

Finally, Appellants challenge the aspect of the Bankruptcy Court's Order that makes the Trustee the assignee and subrogee of the Customers' claims against third parties, including claims against Appellants in the Customer Action.

1.   Assignment

PwC first argues that a trustee acting under SIPA cannot accept an assignment of claims against third parties. A SIPA trustee's power is consistent with the power of a non-SIPA trustee under the bankruptcy code "[t]o the extent consistent with" SIPA. 15 U.S.C. § 78fff(b). The Second Circuit has held that a non-SIPA bankruptcy trustee can accept a creditor's assignment of claims against a third party. See In re CBI Holding Co., Inc., 529 F.3d 432, 459 (2d Cir. 2008). Thus, the assignment approved here is valid as long as it is "consistent with" SIPA, 15 U.S.C. § 78fff(b), and is invalid only if SIPA prevents the Trustee from accepting the assignment.

A recent case from this District considered and explicitly rejected the argument that SIPA bars a trustee from accepting an assignment of claims. See Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,

--- F. Supp. 2d ---, No. 12 MC 115, 2013 WL 6301415, at *4-5 (S.D.N.Y. Dec. 5, 2013) ("BLMIS II"). PwC invites this Court to disagree with BLMIS II's reasoning, but provides no persuasive reason to do so. Indeed, PwC cites no portion of SIPA that would prohibit the assignment made here. PwC's only citations in support of its claim -- Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531 (S.D.N.Y. 1990) and In re Park South Securities, LLC, 329 B.R. 505 (Bankr. S.D.N.Y. 2005) (PwC's Br. at 21) -- are cases that "rely on an assumption that a trustee has no authority to accept assignments absent express authorization in SIPA." BLMIS II, 2013 WL 6301415, at *5. The Second Circuit's subsequent decision in CBI Holding, which permits a trustee to accept an assignment of third-party claims, directly contradicts that assumption. See id. (discussing CBI Holding's effect on Mishkin and In re Park South). Thus, the Court concludes that SIPA does not bar the assignment at issue here.

Appellants next argue that the assignment is void for lack of consideration because the Trustee is legally obligated to repay the Customers regardless of the assignment. "[R]epayment of a debt earlier than required constitutes valid consideration." Alfa, S.A.B. de C.V. v.

Enron Creditors Recovery Corp. (In re Enron Creditors Recovery Corp.), 422 B.R. 432, 441 (S.D.N.Y. 2009) (citing Restatement (Second) of Contracts § 73 (1981)), aff'd, 651 F.3d 329 (2d Cir. 2011).  Given the shortfall in customer property, the Trustee could not repay the Customers right now but for the agreement reached here.  Appellants' arguments to the contrary simply rehash their arguments in opposition to the Bankruptcy Court's factual and legal findings on the shortfall in the customer estates.  The Court has already considered and rejected those arguments.  The Court thus concludes that the advance of general estate funds to the Customers constitutes valid consideration for the assignment.

Appellants cite NOVA Information Systems, Inc. v. Premier Operations, Ltd. (In re Premier Operations), 294 B.R. 213 (S.D.N.Y. 2003), for the proposition that an assignment of a claim from one party to another is void for lack of consideration if a second party is "legally required to reimburse" the first party.  Id. at 222.  That holding turned on the legal principle that payments made under compulsion of law are not valid consideration for an assignment.  See id. at 220-21 (citing cases).  Here, the Trustee is not legally required to make payments to

- 22 -

customers right now; instead, he has chosen to do so in exchange for an assignment of claims. Therefore, the immediate advance payments to customers qualify as consideration to support the assignment.

Finally, PwC argues that the Trustee is not truly an assignee because the Customers and their counsel will still be the plaintiffs in the Customer Action. "In order to make a valid assignment, the owner must manifest an intention to make the assignee the owner of [the] claim." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17 (2d Cir. 1997) (alteration in original) (internal quotation marks omitted). The Bankruptcy Court's Order makes the Trustee the owner of the claims; he will collect all damages obtained in the Customer Action. That the Customers and their counsel will prosecute the claims does not affect the Trustee's ownership of the claims.

Thus, the Court is persuaded that the Bankruptcy Court did not err in permitting the Trustee to accept assignment of the Customers' claims.

3. Subrogation

Appellants argue that SIPA does not permit the Trustee to pursue the Customers' claims as subrogee. They rely heavily on the Second Circuit's recent decision in Picard

v. JPMorgan Chase & Co. (In re Bernard L. Madoff Investment
Securities LLC), 721 F.3d 54 (2d Cir. 2013) ("BLMIS I"),
petition for cert. filed, No. 13-448 (U.S. Oct. 9, 2013).
In BLMIS I, a SIPA trustee sought standing as subrogee of
the corporation's securities customers based on SIPA-
required payments made to those customers at the outset of
liquidation.    The Second Circuit ruled that SIPA text
limited the trustee's subrogation rights to claims against
the estate.    The Circuit Court thus prohibited the trustee
from suing third parties as subrogee of the customers.    Id.
at 74-77.

    There is a key distinction between BLMIS I and this
case.    BLMIS I involved payments required by SIPA (and
subrogation rights controlled by SIPA).    The payments made
here came as a result of negotiation among the parties.
Thus, BLMIS I's reasoning -- which turned on how the SIPA
statute affected the trustee's subrogation rights -- does
not apply here.    Accordingly, the Court concludes that it
should apply traditional principles of subrogation to
determine whether the Trustee can serve as subrogee of the
Customers' claims.

    The doctrine of equitable subrogation applies where
"one party pays a debt for which another is primarily

responsible" and "for the protection of some interest of the party making the payment[.]" <u>Hamlet at Willow Creek Dev. Co., LLC v. Northeast Land Dev. Corp.</u>, 878 N.Y.S.2d 97, 112 (App. Div. 2d Dep't 2009) (<u>quoting</u> <u>Gerseta Corp. v. Equitable Trust Co. of N.Y.</u>, 150 N.E. 501, 504 (N.Y. 1926)). MFGI's general estate made advance payments to the customer estates pursuant to its settlement with the CFTC. The general estate's interest in avoiding litigation with the CFTC gives rise to subrogation rights. <u>See</u> <u>Meckel v. Continental Res. Co.</u>, 758 F.2d 811, 814 n.1 (2d Cir. 1985) (recognizing that "an interest in avoiding litigation . . . can give rise to a right of subrogation" (internal quotation marks omitted)).

Appellants assert that MFGI was primarily responsible for the Customers' claims, and thus cannot be subrogee of claims that it paid. But MFGI did not pay the Customers' claims; its general estate did. And the general estate was not primarily responsible for those claims; the customer estates, in which the Bankruptcy Court found a shortfall, was primarily responsible for repaying the Customers' claims. The Trustee may administer both estates, but they remain separate legal entities. The general estate can thus serve as subrogee of the customer estates.

The Court is persuaded that the principles of equitable subrogation apply here, and that the Bankruptcy Court properly permitted the Trustee to proceed as subrogee of the Customers.

## IV.   ORDER

For the reasons discussed above, it is hereby ORDERED that the Order dated November 6, 2013 of the United States Bankruptcy Court (the "Bankruptcy Court's Order") is **AFFIRMED**; and it is further ORDERED that the applications of appellants Bradley Abelow, Jon Corzine, David Dunne, Laurie Ferber, Vinay Mahajan, Edith O'Brien, Christine Serwinski, Henri Steenkamp, and PricewaterhouseCoopers LLP requesting this Court to set aside the Bankruptcy Court's Order are **DENIED**.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED**.
Dated:    New York, New York
          20 February 2014


                                    _____
                                           Victor Marrero
                                             U.S.D.J.


- 26 -